UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| SVEINN VALFELLS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-1363 (RMC) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

In this case brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the issue has been narrowed to a single question: has the Central Intelligence Agency officially acknowledged that it maintains any record on Sveinn B. Valfells, an Icelandic citizen who spent a considerable amount of time in the United States in the 1940s and 1950s and who died in 1981. If so, the CIA's *Glomar*[1] response — refusing to indicate whether or not it has such records — was inadequate. The Court finds that the disclosure here, contained in an FBI document, cannot be said to be an "official acknowledgment" by the CIA of the existence or nonexistence of the requested records. Therefore, the CIA's response to the Plaintiffs' FOIA request was appropriate. Even if it were not, however, the Plaintiffs have already received the limited information to which they are

---

[1] *See Moore v. Bush*, 601 F. Supp. 2d 6, 14 n.6 (D.D.C. 2009) ("The 'Glomar' response is named after the ship involved in *Phillippi v. Cent. Intelligence Agency*, 178 U.S. App. D.C. 243, 546 F.2d 1009, 1011 (D.C. Cir. 1976). In that case, the FOIA requester sought information regarding a ship named the 'Hughes Glomar Explorer,' and t he CIA refused to confirm or deny whether it had any relationship with the vessel because to do so would compromise national security or would divulge intelligence sources and methods.").

entitled and the case is moot. Summary judgment will be entered for the CIA.

## I. FACTS

The facts in this matter are not in dispute. By letter to the CIA dated November 19, 2007, Thomas E. Moore III, as counsel for Sveinn Valfells,[2] submitted a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, request for agency records concerning Mr. Valfells's deceased grandfather. Specifically, Mr. Moore requested:

> [A]ll information or records relevant to a citizen of Iceland, Sveinn B. Valfells, for the period 1941 to 1975, including but not limited to any records relating to a visa application for entry into the U.S. in the late 1950s. The type of record would also include any papers [sic] records or information kept by Lorrimer Moe (US Cultural Attache in Iceland in 1953) or other members of the US diplomatic corps in Iceland which relate to Sveinn B. Valfells.

Defs.' Mem. Supp. Summ. J. ("CIA Mem.") [Dkt. ## 6, 8], CIA Ex. A.[3] By letter dated December 17, 2007, the CIA acknowledged receipt of the FOIA request and provided a *Glomar* response: "in accordance with section 3.6(a) of Executive Order 12958, as amended, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to this part of your request." CIA Mem., CIA Ex. B. The CIA relied on FOIA Exemptions (b)(1) and (b)(3) to support its denial. *Id.*

---

[2] The CIA has moved to dismiss Mr. Valfells for lack of standing because Mr. Moore's FOIA request letter did not clearly identify that the request was being made on Mr. Valfells's behalf. *See* Defs.' Mem. Supp. Summ. J. 7-10. Although Plaintiffs disagree, "in light of the fact that the issue is not dispositive, and to conserve judicial resources, plaintiffs do not oppose dismissal of Mr. Valfells as a plaintiff." Pls.' Mem. Opp'n & Cross Mot. for Partial Summ. J. [Dkt. ## 14,15] 4 n.2. Mr. Valfells will be dismissed.

[3] Mr. Moore sent identical requests under FOIA to the Federal Bureau of Investigation and the Department of State and initially sued the Department of State and the Department of Justice, of which the FBI is a constituent agency. *See* Compl. [Dkt # 1]. Per stipulation of the parties, approved by Minute Entry Order on December 11, 2009, the claims against the Department of State and the Department of Justice were dismissed, leaving the CIA as the sole defendant. *See* Stipulation of Dismissal [Dkt. # 13].

Mr. Moore appealed the denial by letter dated January 29, 2008. *Id.*, CIA Ex. C. By letter dated March 21, 2008, the CIA denied the appeal and informed Mr. Moore that he could seek judicial review. *Id.*, CIA Ex. E. In handling the same FOIA request, on approximately April 2, 2008, the FBI referred three pages of an FBI report dated February 1956 ("1956 FBI Report") to the CIA for coordination, as required by Executive Order 12,958, section 3.6(b). *Id.*, Hardy Decl. ¶¶ 40, 43; *Id.*, DiMaio Decl. ¶ 11. The CIA responded on April 21, 2008, asking the FBI to withhold certain "CIA-originated information" on the basis of FOIA Exemption (b)(1) in order to protect intelligence sources and methods that are classified pursuant to Executive Order 12958, section 1.4©. *Id.*, DiMaio Decl. ¶ 11. The FBI provided the partially redacted document to Mr. Moore on May 9, 2008. Compl. ¶ 19.

Plaintiffs sued on July 23, 2009, challenging, *inter alia*, the CIA's refusal to confirm or deny the existence of agency records responsive to their FOIA request.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who, "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the

nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.

Cases brought under the Freedom of Information Act are typically and appropriately decided on motions for summary judgment. *See, e.g., Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980). In a FOIA case, a court may award summary judgment solely on the basis of information provided by a federal agency in declarations when the declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### III. ANALYSIS

Federal district courts have original jurisdiction over civil actions arising under federal statutes, 28 U.S.C. § 1331, such as this FOIA suit. FOIA requires agencies of the federal government to release virtually any and all records to the public upon request, unless one of nine statutory exemptions applies. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); 5 U.S.C. § 552(b). FOIA grants jurisdiction to the federal district courts where a federal agency has wrongfully withheld or redacted information. 5 U.S.C. § 552(a)(4)(B). Therefore, to prevail in a

FOIA case, a plaintiff must show that a federal agency has (1) improperly (2) withheld (3) agency records. *See U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989); *United We Stand America, Inc. v. IRS*, 359 F.3d 595, 598 (D.C. Cir. 2004). The defendant agency bears the burden of justifying nondisclosure under FOIA and demonstrating that the agency has adequately segregated exempt from non-exempt information. *See* 5 U.S.C. § 552(a)(4)(B); *Summers v. U.S. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998); *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). A suit is only authorized under FOIA against federal agencies and injunctive relief is only available to remedy an agency's improper withholding of information. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980); *see also* 5 U.S.C. § 552(a)(4)(B), (f)(1). Once the requested records have been produced, there is no longer a case or controversy and the FOIA action becomes moot. *See Armstrong v. Executive Office of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996); *Trueblood v. U.S. Dep't of the Treasury*, 943 F. Supp. 64, 67 (D.D.C. 1996).

Exemption 1 of FOIA "protects matters 'specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . in fact properly classified pursuant to such Executive order.'" *Larson v. U.S. Dep't of State*, 565 F.3d 857, 861 (D.C. Cir. 2009); *see* 5 U.S.C. § 552(b)(1). Pursuant to Executive Order 12,958, an agency may properly withhold information if its disclosure could reasonably be expected to damage the national security of the United States and the agency is able to identify or describe the damage. *See* Exec. Order No. 12,958, 60 Fed. Reg. 19,825 (Apr. 17, 1995); *see also Wolf v. CIA*, 473 F.3d 370, 375 (D.C. Cir. 2007). Damage to national security may be posited only with respect to certain classes of information, which includes information that concerns "intelligence sources or

methods" or the "foreign relations . . . of the United States." *Wolf*, 473 F.3d at 375.

Exemption 3 of FOIA "covers matters 'specifically exempted from disclosure by statute,' provided that such statute leaves no discretion on disclosure or 'establishes particular criteria for withholding or refers to particular types of matters to be withheld.'" *Larson*, 565 F.3d at 861; *see* 5 U.S.C. § 552(b)(3). The National Security Act of 1947, as amended, mandates that the Director of National Intelligence protect intelligence sources and methods from unauthorized disclosure. *See* 50 U.S.C. § 403g; 50 U.S.C. § 403-1(i)(1). These provisions have been recognized as exempting statutes for the purposes of Exemption 3. *See CIA v. Sims*, 471 U.S. 159, 177-79 (1985); *Halperin v. CIA*, 629 F.2d 144, 147 (D.C. Cir. 1980); *Larson*, 565 F.3d at 862.

In certain cases, a FOIA exemption will "cover not only the content of protected government records but also the fact of their existence or nonexistence, if that fact properly falls within the exemption." *Larsen*, 565 F.3d at 861 (citing *Wolf*, 473 F.3d at 374). An agency thus provides a *Glomar* response by which it refuses to confirm or deny the existence of records responsive to the FOIA request. *See Wolf*, 473 F.3d at 374. A *Glomar* response is proper "where to answer the FOIA inquiry would cause harm cognizable under a[] FOIA exception" in that the answer of whether the documents exist at all could lead to unauthorized disclosure. *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982).[4] In determining whether the very existence of the records falls within one of the exemptions in a *Glomar* case, courts apply the general exemption review standards. *See Wolf*, 473 F.3d at 374.

---

[4] "[A] *Glomar* response . . . narrows the FOIA issue to the existence of records *vel non*. Indeed, '[w]hen the Agency's position is that it can neither confirm nor deny the existence of the requested records, there are no relevant documents for the court to examine other than the affidavits which explain the Agency's refusal.'" *Wolf*, 473 F.3d at 374 n.4 (quoting *Phillippi*, 546 F.2d at 1013).

In this case, Plaintiffs do not challenge whether Exemptions 1 and 3 were legitimately raised nor do they dispute that a *Glomar* response is proper in cases where the fact of the existence or nonexistence of an agency record itself falls within a FOIA exemption.[5] Resolution of this matter, instead, turns on whether the CIA has already "officially acknowledged" that it has any record concerning the senior Mr. Valfells. Plaintiffs point to the fact that in May 2008, the FBI released the 1956 FBI Report containing redactions of CIA-originating information made at the request of the CIA on the basis of FOIA Exemption 1. They argue that the CIA has thus waived its ability to answer their FOIA request with only a *Glomar* response and that it would be mere fiction for the CIA to claim it has no information on Mr. Valfells. The CIA contends that no official acknowledgment occurred in that the document released by the FBI does not contain a confirmation or denial by the CIA that it has records on the senior Sveinn Valfells. The parties agree that this question turns on application of *Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007), and its precedent.

In *Wolf*, a reporter sought information from the CIA concerning Jorge Eliecer Gaitan, a Colombian presidential candidate who was assassinated in 1948, leading to the tremendous El Bogotazo riots in that country. The CIA sent back a *Glomar* response. *See Wolf*, 473 F.3d at 372-73. The D.C. Circuit reaffirmed the use of *Glomar* responses to protect intelligence information but further held, "when information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim." *Id*. at 378 (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)). The Circuit explained that an official acknowledgment must meet three criteria:

---

[5] Through the declaration of Ralph DiMaio, the CIA has provided a thorough explanation of the harms caused if it does not respond to all requests for records on foreign nationals with a *Glomar* answer. *See* CIA Mem., DiMaio Decl. ¶¶ 14-25, 31-32.

> First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed . . . . Third, . . . the information requested must already have been made public through an official and documented disclosure.

*Id*. (omissions in original) (citing *Fitzgibbon*, 911 F.2d at 765). A plaintiff therefore bears the burden of pointing to the exact information that is both requested and already in the public domain due to a disclosure by the same agency. *See id*. (citing *Afshar v. U.S. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)). Further, "[i]n the *Glomar* context, then, if the prior disclosure establishes the *existence* (or not) of records responsive to the FOIA request, the prior disclosure necessarily matches both the information at issue – the existence of records – and the specific request for that information." *Id*. at 379 (emphasis in original).

In *Wolf*, the existence of CIA records concerning Mr. Gaitan was confirmed in congressional testimony in 1948, given by Admiral R. K. Hillenkoetter, then-Director of the agency, who quoted from CIA dispatches concerning Mr. Gaitan. *See id*. at 379. By referring to, and quoting from, official CIA dispatches, Director Hillenkoetter officially acknowledged that the CIA maintained records on Mr. Gaitan; he thus waived the agency's ability to respond to a later FOIA request with a *Glomar* response. In this case, the FBI produced a multi-page record from 1956 that contained some information that "originat[ed] with the CIA." CIA Mem., Hardy Decl. ¶ 43. Pages from the 1956 FBI Report were forwarded to the CIA for coordination and the "CIA advised the FBI that portions of information on two of the pages [was] classified" and asked the FBI to withhold it. *Id.* The 1956 FBI Report notes that some of the information derived from "T-1" which is, "an agency of the U.S. Government which conducts intelligence investigations . . . ." Pls.' Reply [Dkt. # 20], Ex. 1 ("1956 FBI Report") at Valfells ("V")-42.

Plaintiffs logically deduce that the "agency of the U.S. Government which conducts intelligence investigations" and which "furnished the following information" concerning the senior Mr. Valfells, may well have been the CIA, particularly as the FBI indicated that "[t]his report is being designated 'SECRET' inasmuch as the file in the Security Office of the U.S. State Department and *the information from CIA*, which has been set forth in the body of this report was so classified." *Id*. at V-42 to 43 (emphasis added). Logical deductions are not, however, official acknowledgments. The report in question is an FBI document and was released to Plaintiffs by the FBI. The CIA asked for redactions and thus attempted to avoid anything that could constitute an official acknowledgment, while the FBI, which has very different interests, was able to fulfill the goals of FOIA and release most of the document to Plaintiffs. Furthermore, if the FBI released some information originating with the CIA, that would not waive the CIA's ability to issue a *Glomar* response as to the record containing the original information, as it was not the CIA that officially acknowledged any record. *See, e.g., Students Against Genocide v. U.S. Dep't of State,* 50 F. Supp. 2d 20, 25 (D.D.C. 1999) ("[T]here is certainly no 'cat out of the bag' philosophy underlying FOIA so that any public discussion of protected information dissipates the protection which would otherwise shield the information sought.").

*Wolf* emphasizes that acknowledgment of the existence (or not) of records must be "official"; in that case, it was the Director of the CIA himself who divulged information before a congressional committee. Although responses to FOIA requests are also official to some degree, it cannot be said that an FBI response to a FOIA request constitutes an official action by the CIA.[6] *See,*

---

[6] The closest to an "official acknowledgment" by the CIA in the record is the declaration of Ralph DiMaio, a CIA Information Review Officer. Mr. DiMaio asserts that the CIA asked the FBI "to withhold certain CIA-originated information on the basis of FOIA exemption (b)(1) . . ."

*e.g.*, *Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999) (noting that public disclosure by one federal agency, the OPM, does not foreclose another federal agency, the CIA, from issuing a *Glomar* response as the D.C. Circuit does not deem "'official' a disclosure made by someone other than the agency from which the information is being sought"); *Salisbury v. U.S.*, 690 F.2d 966, 971 (D.C. Cir. 1982) (noting that "bare discussions by this court and the Congress of NSA's methods generally cannot be equated with disclosure by the [NSA] itself of its methods of information gathering").

Even were the 1956 FBI Report to be deemed an "official acknowledgment" by the CIA, as the CIA had the opportunity to review the report and request redactions, Plaintiffs would still be entitled to nothing more. When a *Glomar* response is insufficient because there has been official acknowledgment of the existence of requested records, a plaintiff is entitled to disclosure of the existence or non-existence of the records that were officially acknowledged; in the case of *Wolf*, that meant that Mr. Wolf was entitled only to disclosure of the existence of the dispatch excerpts referenced in the congressional testimony. *See Wolf*, 473 F.3d at 379 (holding that the plaintiff was entitled only to disclosure of "the *existence* of CIA records about Gaitan that have been previously disclosed (*but not any others*)") (emphasis added); *see also id.* ("[T]he Agency's *Glomar* response does not suffice *regarding the dispatch excerpts that reference Gaitan* because the same 'officially acknowledge' the fact that CIA records 'about Jorge Eliecer Gaitan' exist") (emphasis added). Were a *Glomar* response inadequate here, a question the Court finds favors the CIA, the CIA would be

---

CIA Mem., DiMaio Decl. ¶ 11. At most (setting aside the unsettling prospect that a declaration justifying a response to a FOIA request — and not the response itself — could itself become the duplicative information existing in the public domain) this would constitute an acknowledgment by the CIA as to information redacted pursuant to Exemption (b)(1). An FBI declarant, on the other hand, cannot officially acknowledge CIA records. Therefore, as these redactions were not challenged, and the Court finds that all reasonably segregable information was released, *see infra*, the Plaintiffs have received all to which they are entitled.

required only to acknowledge the existence of information contained in the 1956 FBI Report.

Plaintiffs misread *Wolf* when they argue that, if the 1956 FBI Report constitutes an official acknowledgment by the CIA, the CIA must conduct a new search of its records so that Plaintiffs may "benefit from understanding the extent of responsive information maintained by the agency and the classification status of that information." Pls.' Mem. Opp'n & Cross Mot. for Partial Summ. J. 9. Even if the CIA maintained other records on Mr. Valfells, Plaintiffs would not be entitled to them, nor could they force the CIA to conduct a new search, as the CIA could not be found to have officially acknowledged the existence of any other records beyond the 1956 FBI Report. *See In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) ("release of a document only waives these privileges for the document or *information specifically released*, and not for related materials[]") (emphasis added); *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001) (("We have noted, however, that 'while the logic of FOIA postulates that an exemption can serve no purpose once information . . . becomes public, we must be confident that the information sought is truly public and that the requester receive no more than what is publicly available before we find a waiver.'") (omission in original) (quoting *Cottone v. Reno*, 193 F.3d 550, 555 (D.C. Cir. 1999)); *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992) (finding that where an informant testified in open court, the government need only disclose the "exact information" divulged by the informant and may still withhold all the other information provided by the informant not revealed in his open court testimony pursuant to a FOIA exemption). Therefore, to the extent the CIA could be found to have publicly acknowledged relevant records in the 1956 FBI Report, the CIA would have to provide that duplicative information — and nothing

more.[7]

In this case, the FBI's 1956 report, as relevant, states:

> On January 6, 1956 T-1, an agency of the U.S. Government which conducts intelligence investigations, furnished the following information:
>
> A report which was received in February 1953 from a fairly reliable source indicated that SVEINN B. VALFELLS has been the object of considerable speculation as to his alleged involvement with Communists. The source quoted reports to the effect that VALFELLS has contributed large sums of money to the support of the Icelandic Communist Party (CPI). Other reports, according to the source, belittle his Communist connections and state that he has also contributed to the Conservative Party. In line with the report that VALFELLS has assisted the CPI, the source stated that VALFELLS has contributed to the CPI's daily newspaper, and that he once gave a mansion to [redacted] a prominent Icelandic Communist.

1956 FBI Report at V-42. Assuming, *arguendo*, that this 1956 FBI Report, now released, constitutes an official acknowledgment by the CIA that it has a "record" on the senior Mr. Valfells, the CIA would be required to disclose only the existence of such record and could then assert that one or both FOIA exemptions apply to the substance of the record. *See Wolf*, 473 F.3d at 380. A remand to the district court was necessary in *Wolf* "[t]o determine whether the contents — as distinguished from the existence — of the officially acknowledged records may be protected from disclosure by Exemptions 1 and 3 (or both)." *Id.* Such is unnecessary here. To the extent it can be said that the FBI record officially discloses, on behalf of the CIA, that the CIA has any record on Sveinn B.

---

[7] *See also Sealed Case*, 121 F.3d at 741 ("This limited approach to waiver in the executive privilege context is designed to ensure that agencies do not forego voluntarily disclosing some privileged material out of the fear that by doing so they are exposing other, more sensitive documents."); *Wolf*, 473 F.3d at 378 (recognizing the "fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption[]"; the official acknowledgment exception is applied strictly to only allow for the release of the specific information already disclosed) (citing *Fitzgibbon*, 911 F.2d at 766).

Valfells, such disclosure is limited to the record referenced in the FBI report and "not any others." *Id.* at 379. Plaintiffs do not contest the FBI's exemptions to the Report. Since that record is contained in the FBI report, Plaintiffs have already received more than they might have received had the CIA relied on Exemptions 1 and 3 in the first place. Therefore, their request is moot.

As directed by the D.C. Circuit, *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027-28 (D.C. Cir. 1999), the Court considers, *sua sponte*, whether the segregability decisions made by the FBI on the 1956 FBI Report — the only document at issue here — were appropriate. FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b)(9); *see also Ogelsby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). To this end, the declaration of David M. Hardy provides a "detailed justification" and not just "conclusory statements" to demonstrate that all reasonably segregable information has been released. *See Mead Data Cent.*, 566 F.2d at 261. In fact, it appears that the only information redacted in the 1956 FBI Report were the names of FBI Special Agents and support personnel and the names of third parties. Mr. Hardy's declaration explains in detail that significant national security and privacy interests weigh against the release of these names. *See* CIA Mem., Hardy Decl. ¶¶ 14-19. Based on Mr. Hardy's declaration, the CIA has demonstrated with "reasonable specificity" that the documents cannot be further segregated. *See Armstrong*, 97 F.3d at 578. The Court therefore concludes that the FBI has released all non-exempt information to the Plaintiffs.

## IV. CONCLUSION

The Court holds that the FBI disclosure of records which include redactions of CIA-originating information does not constitute an "official acknowledgment" by the CIA that the latter

agency has any record on Sveinn B. Valfells.  To the extent that such disclosure could constitute an official acknowledgment, the Court finds that the production of the 1956 FBI Report moots any further relief for Plaintiffs.  Accordingly, Defendants' motion to dismiss or for summary judgment [Dkt. ## 6, 8] will be granted, and Plaintiffs' cross-motion for partial summary judgment [Dkt. # 15] will be denied.  Sveinn Valfells will be dismissed as a plaintiff in this case.  A memorializing Order accompanies this Memorandum Opinion.


Date: June 17, 2010                               /s/
                                        ROSEMARY M. COLLYER
                                        United States District Judge